UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLES E. JONES** | **CIVIL ACTION NO. 20-0655** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **AUSTIN BLACKMAN, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Charles E. Jones, a prisoner at Union Parish Detention Center ("UPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately May 22, 2020, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Lieutenant Austin Blackman,[1] Work Release Coordinator Ruby Stanley, Warden Hansen,[2] Officer Mitchell, and John Toffton.[3]

For reasons below, the Court should retain the following claims: (1) Plaintiff's claim against Blackman, Hansen, Mitchell, and Toffton concerning the cavity search; (2) Plaintiff's retaliation claim against Blackman and Mitchell; and (3) Plaintiff's claim against Ruby Stanley for stealing/converting funds from his work release account. The Court should dismiss the remaining claims.

---

[1] Plaintiff also uses the honorific, "Master Sergeant," when referring to Blackman, and he uses an alternative spelling, Blackmon.

[2] Plaintiff also uses an alternative spelling, "Hanson."

[3] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

Plaintiff alleges that, on February 26, 2020, when he returned to UPDC from his job with the transitional work program ("TWP"), Officer Mitchell attempted to search his anal cavity while he was in "the sally port," "an open area normally used for searching offenders returning to the jail from work." [doc. #s 1, p. 3; 8, p. 4]. "While in the sally port, three offenders were already naked and being searched as [Plaintiff] entered." [doc. # 8, p. 4]. While Plaintiff did remove his clothing, he refused to "bend over and spread the cheeks of his buttocks" as directed, informing Mitchell that the cavity search was "against Department of Corrections policy . . . ." [doc. #s 1, p. 3; 8, pp. 4-5].

Lieutenant Blackman then ordered Plaintiff to submit to the cavity search. [doc. # 8, p. 5]. Plaintiff refused, and Blackman told him that he would be placed in administrative segregation if he did not submit. *Id.* Plaintiff "replied 'okay' and then began to put his clothes on." *Id.* Blackman placed Plaintiff in administrative segregation. *Id.*

"After an hour in segregation," John Toffton, a maintenance employee, told Plaintiff that he "would not forfeit his job status in the TWP" if he acquiesced to the cavity search. *Id.* Fearing he would lose his job, Plaintiff acquiesced. *Id.* He felt sexually violated. [doc. # 1, p. 3]. He also felt humiliated, embarrassed, anguished, and upset "due to the illegal and unreasonable search not conducted in privacy . . . [sic]." [doc. # 8, p. 6]. He claims that the search was unlawful because it was "conducted in an open area with no privacy nor reasonable suspicion. [sic]." *Id.* at 7.

Approximately twenty-six minutes later, Blackman "delivered [Plaintiff] a disciplinary report for 'aggravated disobedience' even though [Plaintiff] complied." [doc. # 8, p. 5]. Major Lee, however, dismissed the disciplinary report. *Id.*

2

Plaintiff claims that, although he submitted to the search and Major Lee dismissed the disciplinary report, Ruby Stanley refused to give him his job back, and Blackman and Mitchell placed him in administrative segregation for ten days without a prior administrative hearing because he initially refused the search. [doc. #s 1, p. 3; 8, pp. 4, 6-8]. He also claims that Blackman and Mitchell retaliated, placing him in segregation because he requested a grievance form. [doc. # 8, p. 8].

Plaintiff claims that from August 10, 2019, to February 26, 2020, Ruby Stanley stole money from his "work release account." [doc. # 1, p. 3].

Plaintiff claims that Warden Hansen initiated the "practice of visual body cavity searches . . . ." [doc. # 8, p. 6]. He also claims that Hansen is "vicariously liable for any acts of negligence committed by his subordinates." *Id.* at 7.

Plaintiff seeks: (1) a transfer; (2) nominal damages for the allegedly unlawful search, confinement, and restriction of his right to access the courts; (3) $50,000.00 in punitive damages for the search; (4) $12,072.00 for his lost wages; (5) compensation for various "state law damages"; (6) compensation for his lost good-time credits; and (7) "other relief as the court deems appropriate." [doc. #s 1, p. 4; 8, p. 9].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] See *Martin v. Scott,* 156 F.3d

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

3

578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Administrative Segregation**

Plaintiff claims that Blackman and Mitchell placed him in administrative segregation for ten days without a prior administrative hearing because he "refus[ed] to submit to an unlawful visual body cavity search . . . ." [doc. # 8, pp. 4, 6-8].

Plaintiff does not plead a plausible claim because ten days in administrative segregation, alone, does not implicate a protected property or liberty interest. See *Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false evidence," that the plaintiff did not allege "a due process violation" because his punishment did not "implicate a protected liberty interest[.]"

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[5]

The Court must determine whether Plaintiff's isolation constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (cited with approval by *Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the "Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation

---

[5] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

7

under even the most isolated of conditions may not implicate a liberty interest." *Id.* (citing *Wilkerson*, 774 F.3d at 855).

Here, Plaintiff claims that he was in administrative segregation for ten days. Even "under the most isolated of conditions," this period of segregation was not excessive in degree. See *Bailey*, 647 Fed. App'x at 476. As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible procedural-due-process claim.[6]

Accordingly, the Court should dismiss this claim.

**3. Negligence**

Plaintiff claims that Blackman and Mitchell negligently placed him in punitive segregation "due to imprudence . . . ." [doc. # 8, p. 8].

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

---

[6] See *Bailey*, 647 Fed. App'x at 476 (finding that, if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs, that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); see also *Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

Here, Plaintiff's ostensible negligence claim is entirely conclusory. He does not explain how or why Blackman and Mitchell were negligent. Even construed liberally and in Plaintiff's favor, this claim is vague and conclusory. He does not disclose enough pertinent facts to state a plausible claim. The Court should dismiss this claim.

**4. Access to Court**

In its entirety, this claim reads: "Plaintiff avers that the defendants' acts of improperly placing him in punitive segregation subsequent to requesting a grievance form (A.R.P.) violated his right to petition the courts in contravention of the First Amend[ment] . . . ." [doc. # 8, pp. 5, 8].

The Court should dismiss this claim as conclusory. To succeed, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here, Plaintiff does not specify a claim that any defendant either prevented him from filing or caused him to lose. Even if he alleged (he does not) that he was unable to file his unlawful search claim because he was in administrative segregation, he filed that claim and is litigating it here. Again, the Court should dismiss this claim.

**5. Lost Work Release Job**

Plaintiff claims that, though he submitted to the search and Major Lee dismissed the disciplinary report, Ruby Stanley refused to give him his work release job back. He also faults the other defendants, claiming that he lost his position because he refused to submit to the search. He adds that the search was "against DOC policy" and that he "had a state created right not to forfeit his job unless he failed to follow rules of the [DOC] . . . ." [doc. # 8, p. 8].

As a prisoner, however, Plaintiff lacks a property interest in work release. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (citing with approval other courts of appeals' consistent holdings that "an inmate's expectation of keeping a specific prison job, *or any job*, does not implicate a protected property interest.") (emphasis supplied); see *Batiste v. Tubbs*, 2015 WL 6438851, at *3 (W.D. La. Sept. 25, 2015), report and recommendation adopted, 2015 WL 6441103 (W.D. La. Oct. 21, 2015).

Plaintiff also lacks a liberty interest in work release. In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the United States Court of Appeals, Fifth Circuit, determined that LA. REV. STAT. 15:1111(A), which authorizes the DPSC "to establish and administer a work release program for inmates of any institution under the jurisdiction of the department[,]" does not create a liberty interest:

> The statute's overall scheme, while not entirely deferential, entrusts the Department with the actual operation of the work release program. The statute does not dictate to the Department whom it must put on work release. While it is true that some discretion in some aspects of the process is not fatal to finding a liberty interest, we conclude that here the latitude that La.R.S. 15:1111 places in the Department forecloses Welch's assertion that he was deprived of his due process rights. In sum, no liberty interest is created by La.R.S. 15:1111.

*Id.* at 644 (internal footnotes removed).

Louisiana Revised Statute 15:711(A), which authorizes the sheriff of each parish to

"establish and administer a work release program for inmates of any jail or prison under his jurisdiction[,]" is virtually identical to LA. REV. STAT. 15:1111. "Because [LA. REV. STAT. 15:711] did not create an enforceable expectation of placement in a work-release program, it did not create a liberty interest that is entitled to due-process protection." *James v. Hertzog*, 415 F. App'x 530, 532 (5th Cir. 2011).

Here, because Plaintiff lacks a liberty and property interest, he does not state a claim for denial of due process. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

To the extent Plaintiff claims that defendants violated the Eighth Amendment by denying him work release, he fails to state a plausible claim. "Punishment rises to the level of cruel and unusual only if it involves an unnecessary and wanton infliction of pain. Needless to say, denial of the right to participate in a work-release program falls far short of that." *Hertzog*, 415 F. App'x at 533.

Accordingly, the Court should dismiss this claim.

**6. Good-Time Credits**

In his initial pleading, Plaintiff sought $100,000.00 for the loss of good-time credits. [doc. # 1, p. 4]. Plaintiff did not mention the loss of good-time credits in the body of his pleading; rather, he characterized the allegation as only a request for relief. Out of caution, the undersigned instructed Plaintiff to amend and clarify the possible claim.

The undersigned ordered Plaintiff to submit the following information, if he was charged with any disciplinary infractions, disciplinary violations, or crimes arising out of the events in question:

11

> (A) identify the charges, infractions, or violations and state whether they are pending; (B) state whether he was convicted and which charge, infraction, or violation resulted in a conviction; (C) state whether any conviction resulted in a change to his sentence or a loss of good-time credits; (D) state whether any conviction was reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus; and (E) provide any documents associated with his charges and convictions[.]

[doc. # 7, pp. 2-3]. The undersigned also ordered Plaintiff to "clarify whether he lost good-time credits or lost only the opportunity to earn good-time credits[.]" *Id.* at 3.

Plaintiff did not mention the request for relief in his amended pleading. He also failed to identify a responsible defendant. Even if he attempted to raise a claim in his initial pleading, his allegations are conclusory. The Court should dismiss this request for relief.[7]

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DISMISS** the following as frivolous and for failing to state claims on which relief may be granted: (1) Plaintiff Charles E. Jones's claim that Blackman and Mitchell placed him in administrative segregation without a prior administrative hearing; (2) Plaintiff's negligence claim; (3) Plaintiff's access-to-court claim; (4) Plaintiff's claim that Ruby Stanley refused to return his work release job; and (5) Plaintiff's request for relief concerning lost good-time credits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

---

[7] As noted, Plaintiff does not clarify whether he lost good-time credits or lost only the opportunity to earn good-time credits. Even if he claimed that he lost good-time credits because he was convicted of a crime, infraction, or violation, the undersigned would recommend dismissal under *Heck v. Humphrey,* 512 U.S. 477 (1994). See *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) ("A conviction, for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits.").

party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 31st day of July, 2020.

Karen L. Hayes
United States Magistrate Judge