UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CHARLES E. JONES**             **CIVIL ACTION NO. 20-0655**

            **SECTION P**

**VS.**

            **JUDGE TERRY A. DOUGHTY**

**AUSTIN BLACKMAN, ET AL.**             **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Defendants Austin Blackman, Ruby Stanley, Ray Hansen, Officer Mitchell, and John Toffton move for summary judgment, arguing that Plaintiff Charles E. Jones failed to exhaust his available administrative remedies before filing this proceeding.[1] [doc. # 24]. Plaintiff opposes the motion. [doc. # 30]. For reasons below, the Court should deny the motion.

### Background

Plaintiff, a prisoner at Union Parish Detention Center ("UPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately May 22, 2020, under 42 U.S.C. § 1983.

Plaintiff raises claims against Blackman, Hansen, Mitchell, and Toffton concerning an unlawful cavity search. He claims that Blackman and Mitchell engaged in unlawful retaliation. He also claims that Ruby Stanley stole or converted funds from his work release account. He seeks nominal damages, punitive damages, and compensation. [doc. #s 1, p. 4; 8, p. 9].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

## Law and Analysis

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[2]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all

---

[2] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

---

[3] I.e., beyond doubt.

B. <u>Exhaustion Principles</u>

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua,* 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford,* 548 U.S. at 89–93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. See, e.g., *Williams v. Henagan,* 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas,* 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers,* 596 F.3d 260,

4

266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

C. <u>Analysis</u>

Plaintiff raises claims under federal and state law. The Court will consider the claims together. *See Donahue v. Wilder*, 824 F. App'x 261, 265 (5th Cir. 2020) ("Although Donahue raised § 1983 claims and state-law claims against the Defendants, the requirements under the Louisiana PLRA and Federal PLRA are substantively similar, so we consider both together.").[4]

Defendants argue that Plaintiff failed to initiate the administrative remedy procedure. They argue alternatively that even if Plaintiff started the process, he did not complete it. [doc. # 24-1, p. 6]. They present the following statements of fact:

> UPDC has adopted an administrative remedy procedure ("ARP"), which is set forth in the UPDC "Offender Handbook." (Ex. A, Adams Declaration, ¶¶ 9-10; Ex. A-1, Offender Hand book excerpt).
>
> 5.
>
> At step one of the ARP, an inmate initiates the procedure by filling out a grievance form, and delivering the completed form to the Warden or his designee within 30 days of the incident that is the subject of the grievance. (Ex. A-1, Offender Handbook excerpt). The grievance form is screened and sent to the staff member who can best deal with the matter; that staff member is referred to as the "Step One Respondent." (Id.). The Step One Respondent responds to the inmate within 15 days from receiving the completed grievance. (Id.).
>
> 6.
>
> An inmate who is not satisfied with the step-one response may request a review within five days of receiving the response. (Id.). The Deputy Warden ensures

---

[4] "The Louisiana PLRA provides that '[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted.'" *Donahue*, 824 F. App'x at 265 (quoting LA. REV. STAT. § 15:1184(A)(2)). "Under Louisiana law, if an inmate files suit 'prior to exhaustion of administrative remedies, the district court lacks jurisdiction over the matter, and the suit shall be dismissed without prejudice.'" *Id.* (quoting *Boudreaux v. La. Dep't of Pub. Safety & Corr.*, 222 So. 3d 63, 66 (La. Ct. App. 2017)).

5

that the inmate receives a review decision, in writing, within 25 days after receiving the request for step-two review. (Id.).

7.

If an inmate is not satisfied with the second-step review, the inmate may appeal to the Warden. (Id.). The Warden makes a final decision within 40 days of receiving the step-three appeal. (Id.). The Warden's decision is final. (Id.).

8.

The ARP clearly warns inmates that all ARP steps must be followed, or an inmate "MAYBE BARRED FROM LATER BRINGING HIS GRIEVANCE FORWARD." (Id.).

9.

Donnie Adams ("Warden Adams") has been employed by UPDC at all times relevant to this litigation, and has served as Warden since June 25, 2020. (Ex. A, Adams Declaration, ¶ 5).

10.

Warden Adams has personal knowledge of UPDC's ARP, and UPDC's record-keeping system for grievances filed pursuant to the ARP. (Id. at ¶ 11, 16).

11.

When an inmate files any grievance pursuant to UPDC's ARP, a copy of the grievance is placed in the inmate's file, which is stored in a file room at UPDC. (Id. at 17).

12.

Warden Adams conducted a diligent search of UPDC's inmate file on Jones, and found no record of Jones ever filing a grievance pursuant to UPDC's ARP. (Id. at 18).

13.

If Jones had filed such a grievance, a copy of the grievance would have been in the records Warden Adams reviewed. (Id.).

14.

Jones acknowledges UPDC maintains a grievance procedure. (Doc. 8, Amended Complaint, p. 2).

15.

There is no evidence to support Jones's claim he filed a step-one grievance. [doc. # 24-2, pp. 2-3].

Plaintiff, however, genuinely disputes that he failed to initiate the grievance process by filing a grievance under the first step of the policy. He alleges in his first pleading that he "filed an administrative remedy procedure but never received a[n] answer to it[.]" [doc. # 1, p. 2]. He alleges that he "filed 3 of them with no response." *Id.* He alleges in another pleading, "I filed step 1, however they have never responded." [doc. # 8, p. 2]. While Plaintiff does not present these allegations in an affidavit or declare that they are true under penalty of perjury, he can always testify under oath to what he alleges.[5]

---

[5] *See Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019) (quotations omitted) ("New Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial. Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . ,the material may be presented in a form that would not, in itself, be admissible at trial."); *Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019) (reasoning that considering whether a plaintiff's unsworn assertions "could have been presented in an admissible form . . . is particularly relevant where a *pro se* plaintiff's allegations form his entire response in opposition to summary judgment."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record.").

Plaintiff concedes that he did not proceed beyond the first step of the policy, but he maintains that he did not do so because officials did not respond to his first-step grievance. [doc. # 30-1, p. 2]. He argues that officials' failure to respond "halted the procedure causing him the inability to proceed. [sic]." *Id.*

Citing *Wilson v. Epps*, 776 F.3d 296, 302 (5th Cir. 2015), defendants argue that Plaintiff was "required to follow all steps of the ARP, even if UPDC did not respond at an earlier step." [doc. # 24-1, p. 6]. In *Wilson*, the court opined:

> Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301.

Critically, however, the policy in *Wilson* stated, "'Expiration of response time limits without receipt of a written response shall entitle the offender to move on to the next step in the process.'" *Id.* at 300. As the Fifth Circuit explained:

> In *Wilson v. Epps,* 776 F.3d 296 (5th Cir. 2015), the plaintiff contended that the prison's failure to respond to his initial grievance excused him from further steps in the process. *Id.* at 301. We explained that "[t]his argument deserves close[ ] scrutiny, because, under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted." *Id.* The relevant circumstances, we explained, are the requirements of the prison's grievance procedures. The grievance procedures at issue in *Wilson* stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled"[to]—and therefore, to exhaust, *must*— "move on to the next step in the process." *Id.* (quoting grievance procedures). By contrast, in *Underwood v. Wilson,* 151 F.3d 292 (5th Cir. 1998), *overruled on other grounds as explained in Gonzalez v. Seal,* 702 F.3d 785 (5th Cir. 2012), we held that when a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps

8

> that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. *Id.* at 295.

*Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015). The Fifth Circuit applied that reasoning in *Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016), opining:

> The grievance policies of the Dallas County Jail indicate that *Wilson* does not apply on the facts before us. The jail's Grievance Plan provides that "[i]f an inmate is not satisfied with a Board's *findings*, the inmate may appeal to the Detention Service Manager, Quality Assurance Unit." The Plan further indicates that the "Board's *findings*" are delivered to an inmate in a "written reply ... within 60 days of the initial grievance receipt." An interim response does not contain "findings" that a prisoner may appeal. Nor does any other provision in the plan permit an inmate to appeal the lack of a timely interim reply. Here, unlike in *Wilson*, the policies afforded Cowart no "next step" once the response period for an interim reply had lapsed, but pending his receipt of a written answer with findings.

Here, the portion of the policy that Defendants present does not contain a statement like the one in *Wilson* permitting a prisoner to proceed to the next step if the prisoner does not receive a response in the requisite time period. In addition, the policy here states that an offender may request review under the second step if the offender is not satisfied with the "response at Step One." [doc. # 24-5, p. 3]. If an offender receives no response then, *a fortiori*, he lacks a response with which to be unsatisfied.

More importantly, the policy states that an offender may proceed to "Step two" by "signing the bottom of the Response to his Grievance, and depositing it for collection within five (5) days of the detainee's receipt of the Step One Response." [doc. # 24-5, p. 3]. Perforce, if an offender does not receive a response to his step-one grievance, it is not possible to proceed to step two because there is no response to sign and deposit. Moreover, an offender could not, for instance, deposit a document other than a response to his grievance because the policy requires an offender to wait until he receives a response to proceed to the next step. *See Stewart v. Smith*, 2018 WL 3966280, at *5 (W.D. Tex. Aug. 17, 2018) ("Without a decision on a timely-filed Step

9

1 grievance, there was no "'next step'" to which Stewart could advance.").[6] Without a response, the remaining steps of the policy are not "capable of use." *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'").

Defendants essentially attempt to graft an additional requirement into the existing policy: that offenders must proceed to the next step if they do not receive a first-step response, using a document other than a first-step response. *See Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) ("Erwin reads an additional requirement into the policies—one requiring prisoners to object in some way if they do not receive a timely interim reply."). However, "[e]xhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015); *see Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

Finally, defendants contend, "[t]o the extent Plaintiff argues he was relieved from the exhaustion requirements because he felt pursuing UPDC's ARP would be futile, that argument must fail." [doc. # 31, p. 3]. Defendants cite *Randall v. Nash*, 505 F. App'x 372, 373 (5th Cir. 2013), which states that "[t]here is no futility exception to the exhaustion requirement."

---

[6] *See also Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 996-97 (6th Cir. 2004) (prison officials' failure to respond to prison grievances rendered administrative remedies unavailable where prison procedure required prisoners to receive a response from the grievance officer before appealing to the warden); *Henderson v. Moore*, 2008 WL 2704674, at *5 (S.D. Tex. Jul. 2, 2008) (explaining that "even if it was necessary for plaintiff to file a Step 2 grievance, the uncontested facts establish that he could not have done so timely because he did not receive a copy of the Step 1 response" and holding that "[u]nder the particular circumstances of this case, the fact that plaintiff *never* received a copy of the Step 1 response excused any failure to exhaust") (emphasis in original)).

Here, unlike in *Randall*, Plaintiff maintains that he *did* attempt to exhaust his administrative remedies. Moreover, whether he feared the futility of proceeding to the next step is irrelevant because there was no available next step: there was an available time in which the "Step One Respondent" was required to respond, and the policy did not prescribe any additional steps that Plaintiff was required to take if he did not receive a response in that time. *See Underwood*, 151 F.3d at 292.

Consequently, there is a genuine issue of material fact for trial whether Plaintiff exhausted all available administrative remedies before filing this proceeding.

## Conclusion

For reasons above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, [doc. # 24], be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 20th day of April, 2021.

_____
Kayla Dye McClusky
United States Magistrate Judge