UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLES E. JONES** | **CASE NO.  3:20-CV-0655, SEC. P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **AUSTIN BLACKMAN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned is a motion for partial summary judgment filed by Austin Blackman ("Blackman"), Ray Hansen ("Hansen"), Officer Mitchell ("Mitchell"), and John Toffton ("Toffton"), together Defendants. [doc. #48]. The motion is opposed by Plaintiff Charles Jones ("Plaintiff"). [doc. #61]. For the reasons assigned below, it is **RECOMMENDED** that this motion be **GRANTED,** and Plaintiff's remaining claims in this matter be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff is an inmate at the Union Parish Detention Center ("UPDC"), and during his incarceration, he participated in UPDC's Transitional Work Program ("TWP"), which allowed him to work at Foster Poultry Farms in Farmerville, Louisiana. [doc. #47-1]. On February 26, 2020, as he was returning to UPDC after a shift at Foster Poultry Farms, Plaintiff entered the facility through the sally port, an area of the facility used to search inmates who are returning from work placement. [doc. #8]. Plaintiff claims that when he entered the sally port, there were three other inmates who were naked and being searched by officers. *Id.*  Plaintiff was instructed to remove his shoes and clothes, so they could be searched by an officer. *Id.*  Allegedly, once Plaintiff was naked, Mitchell told him "to bend over and spread the cheeks of his buttocks." *Id.*

Case 3:20-cv-00655-TAD-KDM     Document 66     Filed 11/18/21     Page 2 of 15 PageID #: 1022

Plaintiff refused, telling Mitchell that his orders were against the policies of the Department of Corrections.  *Id.*  At this time, Blackman, another officer, ordered Plaintiff to bend over and spread his buttocks cheeks.  *Id.*  Plaintiff again refused the request and asked for a grievance form.  *Id.*  Allegedly, Blackman informed Plaintiff that if he did not comply with the officers' requests, he would be placed in administrative segregation.  *Id.*  Plaintiff replied, "okay," proceeded to put his clothes on, and was subsequently put in administrative segregation for ten days.  *Id.*

Plaintiff claims that approximately one hour after being placed in segregation, he was approached by Toffton, a member of the maintenance staff.  *Id.*  Allegedly, Toffton told Plaintiff that if he submitted to an anal cavity search, he would not lose his job at Foster Poultry Farms.  *Id.*  Plaintiff claims that in order to keep his job, he submitted to the anal cavity search conducted by Toffton and Terry McGaha, another UPDC employee.  *Id.*; [doc. #62].

On May 22, 2020, Plaintiff filed his Original Complaint alleging, *inter alia*, that Defendants' order for Plaintiff to submit to an anal cavity search in the sally port violated his Fourth and Eighth Amendment rights.  [doc. #1].  In his opposition to Defendant's motion for summary judgment, Plaintiff appears to claim that the search that was ultimately performed in his administrative segregation cell also violated his Fourth and Eighth Amendment rights.  [doc. #61, p. 1].  Plaintiff also contends that Defendants' decision to place Plaintiff in administrative segregation was retaliatory because it arose from his request for a grievance form and/or his refusal to consent to a search in the sally port.  [doc. #1].

On July 21, 2020, Plaintiff filed his Amended Complaint, of which the Court conducted an initial screening pursuant to 28 U.S.C. § 1915A and dismissed several of Plaintiff's claims as either frivolous or for failing to state a claim upon which relief can be granted.  [docs. # 9; 12].

2

However, the Court retained Jones's claims for retaliation, violation of his Fourth and Eighth Amendment rights, and conversion. *Id.*

On August 3, 2021, Defendants filed the instant motion for summary judgment regarding Plaintiff's claims for violation of his Fourth and Eighth Amendment rights, as well as Plaintiff's claim for retaliation. [doc. #48]. Defendants filed a separate motion for summary judgment regarding Plaintiff's conversion claim, which this Court granted. [doc. #47].

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict to the nonmoving party. *Id.*

The party seeking summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden by showing that the record lacks any support for the non-moving party's claim. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-moving party is unable to point to anything in the record to support the claim, summary judgment is appropriate. *Id.*

In evaluating a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence," and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA, Inc. v. Kerr-McGee*

*Oil & Gas Corp.*, 719 F. 3d 424, 434 (5th Cir. 2013) (citations omitted). While the Court must "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly pled motion for summary judgment, the non-moving party must offer "significant probative evidence" that a genuine issue of material fact exists." *Hamilton v. Segue Software, Inc.*, 232 F. 3d 473, 477 (5th Cir. 2000).

### III. DISCUSSION

In his Complaint, Plaintiff claims, *inter alia*, that Defendants violated his Fourth Amendment and Eighth Amendment rights when Blackman and Mitchell initially ordered Plaintiff to submit to a visual anal cavity search, and when Toffton and McGaha ultimately performed the search. [doc. #8]. Plaintiff further alleges that due to his failure to comply with a direct order and/or his request for a grievance form, Defendants retaliated against Plaintiff by placing him in administrative segregation for ten days. *Id.*

In their motion for summary judgment, Defendants contend that conducting anal cavity searches on inmates is not unreasonable, and, therefore, the searches did not violate Plaintiff's Fourth Amendment rights. [doc. #48]. Defendants also argue that Plaintiff's retaliation claim fails. *Id.* According to Defendants, if Plaintiff's retaliation claim arises from his refusal to comply with an order from prison officers, the claim must fail because Plaintiff was not exercising a constitutional right and because he has failed to establish intent, causation, and a greater-than-de-minimis-adverse act. [doc. #48-1]. Defendants also argue that if Plaintiff's retaliation claim is based on his request for a grievance form, the claim must fail because Plaintiff cannot establish intent, causation, or a greater-than-de-minimis-adverse act. *Id.*

4

### A.  *Plaintiff's Eighth Amendment Violation Claims*

Although Plaintiff alleges the order to submit to a visual cavity search was a violation of both his Fourth and Eighth Amendment rights, the Fifth Circuit is clear "that the Fourth and not the Eighth Amendment governs searches of prisoners." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (2007); *see also Moore v. Carwell,* 168 F.3d 234, 235 (5th Cir. 1999) ("We hold . . . that the Fourth Amendment, rather than the Eighth Amendment, applies to this type of prisoner search."). Accordingly, to the extent that Plaintiff asserts Eighth Amendment claims, it is recommended that Defendants' Motion for Partial Summary Judgment be GRANTED, and these claims DISMISSED WITH PREJUDICE.

### B.  *Plaintiff's Fourth Amendment Violation Claims*

"Strip and body cavity searches are 'searches' of 'persons' under the meaning of the Fourth Amendment" and as such, must be reasonable. *Henry v. Hulett*, 969 F.3d 769, 776 (7th Cir. 2020); *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). There is no black and white definition to determine when a search is reasonable or unreasonable; instead, each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails," which requires an examination of "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted." *Id.* at 559.

Although a search under the Fourth Amendment must be reasonable, Fifth Circuit jurisprudence is clear that "reasonableness" in the prison context is analyzed using a different standard. Because of the exaggerated safety concerns in prisons, "[c]ourts ordinarily should defer to prison officials, if a policy is reasonably related to legitimate security objectives and there is no substantial evidence to indicate that prison officials have exaggerated their response

5

to security considerations." *Parker v. Woods*, 834 Fed. App'x 92, 95 (5th Cir. 2020). Therefore, because of the great deference afforded to prisons, the "burden of proving reasonableness [in the prison context] is a light burden." *Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). Moreover, "[w]hen evaluating the security policies adopted by prison administrators, the court is not required to apply a least restrictive means test." *Id.*

In evaluating a prisoner's claim for an unconstitutional search, the court must first look to whether the prison had a legitimate need to perform the search. *Bell*, 441 U.S. at 546. Courts have said that "[a] detention facility is a unique place fraught with serious dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Id.* at 540. Accordingly, courts have explained that "[c]ontrolling the flow of contraband and ensuring institutional security are legitimate penological objectives." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017). To further these interests, visual body cavity searches are often conducted on inmates returning to the facility from off-site work placements. *See id.*

If a prison has a legitimate need to conduct searches on inmates, the court must then consider whether the prison's interest in conducting the search outweighs the invasion of the inmate's privacy rights. *Bell*, 441 U.S. at 559. In determining to what extent the inmate's privacy rights were infringed upon, the court must examine the scope, justification, manner, and location of the search. *Id.* First, the Fifth Circuit has found that the scope of a search is reasonable when it is limited to a visual body cavity search. *See Elliott*, 38 F.3d at 191 ("Under appropriate circumstances, visual body cavity searches of prisoners can be constitutionally reasonable."). Second, courts have determined that preventing prisoners from bringing contraband into prisons is a valid justification for performing visual body cavity searches. *See Lewis*, 870 F.3d 365 (The Fifth Circuit upheld a district court decision finding that a correctional

facility's protocol of performing visual cavity searches on inmates returning from off-campus work sites where they interacted with non-inmates and had access to dangerous materials was reasonable).  Third, courts have found that the manner of the search is reasonable when it is performed by a member of the same sex as the inmate, and members of the prison staff are present, as well as other inmates who are also being searched.  *See Ponce v. Lucas*, No. 10-cv-1478, 2015 WL 5971074, at *1, 4 (W.D. La. Sept. 8, 2015) (finding constitutional a prison's practice of searching inmates in groups of approximately ten after the inmates had returned from off-campus work sites).  Finally, courts have found that the location of a search is not inherently unreasonable if inmates not being searched could observe the search.  *See Gipson v. Wilkinson*, No. 10-cv-00524, 2015 WL 4395031, at *7 (W.D. La. July 16, 2015) (a visual body cavity search in a room with windows that other inmates could see through was not unreasonable).

  i.    *UPDC's Interest in Searching Inmates*

Plaintiff alleges that his Fourth Amendment rights were violated when Defendants ordered Plaintiff to submit to a body cavity search in the sally port, and he appears to claim another Fourth Amendment violation when Toffton and McGaha actually performed the body cavity search in cell 53. [docs. #1; 8; 61].  Defendants contend that both incidents constitute lawful searches (or orders to search) because the prison's need to conduct the searches outweighed any infringement on Plaintiff's privacy rights that may have occurred.  [docs. #48; 62].

The UPDC has a legitimate interest in preventing the flow of contraband from entering the prison.  *Lewis*, 870 F.3d at 368.  Like many prisons, UPDC struggles with inmates smuggling contraband into the prison.  Donnie Adams, the UPDC Warden, avers that "UPDC faces a constant, daily battle with inmates attempting to smuggle contraband (including, but not limited

to, weapons and illegal drugs) into the UPDC." [doc. #48-3]. Plaintiff also admitted that inmates on work release have access to contraband and that inmates find ways to bring contraband into the facility. [doc. #48-10]. To prevent this practice, UPDC performs visual body cavity searches on inmates returning from off-site work placement. *Id.* According to Adams, these searches help by "assist[ing] UPDC in both discovering weapons, drugs, and other contraband and in deterring inmates from smuggling those items into the facility." *Id.* Therefore, UPDC has a legitimate penological interest in preventing contraband from being brought into the prison, and this interest is furthered by conducting visual body cavity searches on inmates entering the facility.

    ii.    *Manner of the Search*

Plaintiff alleges that the attempted search in the sally port violated his Fourth Amendment rights. [docs. #1; 8]. However, no search actually occurred once Plaintiff refused. [docs. #1; 8; 48-1]. Therefore, the attempted sally port search cannot serve as a basis for a Fourth Amendment violation.

Plaintiff also contends that the search that ultimately occurred in cell 53 violated his Fourth Amendment rights. [doc. #61]. However, the prison's need to prevent contraband from entering the prison outweighed any infringement on Plaintiff's privacy rights due to the reasonableness of the search. First, the scope of the search was limited to a visual body cavity search. In other words, at no time was Plaintiff touched. [doc. #48-10, p. 12]. Moreover, the search was not performed arbitrarily or done at an unreasonable frequency. It is UPDC policy that every inmate returning from work sites not in the prison must submit to a visual body cavity search upon reentry into the facility. *See* [doc. #48-8] (UPDC has a "practice of performing visual body cavity searches of inmates returning to the facility, who have been on work release

8

and/or in contact with non-inmates"). In fact, Plaintiff admitted that every inmate reentering the facility on the day he returned from work was ordered to submit to a cavity search. [doc. #48-10, p. 12]. Therefore, the scope of the search was reasonable.

Second, UPDC's justification for searching Plaintiff was reasonable. As discussed *supra*, body cavity searches are performed on all inmates returning from non-prison work sites. At these sites, inmates have access to non-inmates and materials that, if brought into the prison, would constitute contraband, and potentially result in dangerous situations for the inmates and staff. [doc. #48-1, p. 13]. The possibility of these materials being smuggled into the prison is curbed by visual body cavity searches. Because the purpose of the search was to ensure Plaintiff was not bringing contraband from his work-site into the prison, UPDC was justified in performing the search.

Third, the search was conducted in in a reasonable manner. The search was performed by prison employees of the same sex as Plaintiff. [doc. #48]. Although there is a dispute as to whether female guards were observing the sally port search, female guards viewing the search would not render the search unreasonable. *See Garrett v. Thaler* (finding that placing video cameras in restrooms, showers, and dressing areas of a prison and assigning female guards to monitor those cameras did not violate inmates' Fourth Amendment rights); *see also Story v. Foote*, 782 F.3d 968, 972 (8th Cir. 2015) (explaining an earlier Eighth Circuit decision which "held that prison administrators did not violate the Fourth Amendment rights of inmates by allowing intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in their cells"). Also leaning towards reasonableness is how few people were present for the search. Only Toffton and McGaha, the employees conducting the search, were present. [doc. #1; 8; 61]. There were no additional

9

guards or inmates observing the search. *Id.* Although Plaintiff contends that Toffton and McGaha, the staff that ultimately conducted the search, were not authorized under UPDC policy to conduct visual body cavity searches, this also does not deem the search unconstitutional. Courts have been clear that "internal rules and regulations [of prisons and the bodies that oversee prisons] do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." *Lewis*, 870 F.3d at 369. Therefore, even if Plaintiff is correct in that the cell 53 search violated UPDC's own policy, that does not render it unconstitutional. While Toffton and McGaha may not have regularly conducted searches, it is not unreasonable for employees of the prison to conduct visual body cavity searches, particularly when McGaha was authorized to conduct other forms of searches. [docs. #61-1, p.1; 62, p. 4-5]

Finally, the location of the search is not unreasonable. Defendants contend that cell 53 is a contained cell that provided privacy to Plaintiff during his search. [doc. #48]. Plaintiff himself admits that cell 53 was private. *See* [doc. #61, p. 2] (Plaintiff's "compliance to submit to the search was based in part on the privacy that the administrative segregation cell provides"). Therefore, because of the protection that cell 53 provided, the location of the search was reasonable.

Accordingly, the search at issue sought to advance a legitimate penological interest, namely, preventing the smuggling of contraband to ensure the security of the prison. Moreover, while visual body cavity searches are undoubtedly intrusive, the circumstances surrounding this search indicate that any infringements to Plaintiff's right to privacy that the search may have inflicted are outweighed by the prison's need to search the inmates. Therefore, the search was reasonable and, as such, did not violate Plaintiff's Fourth Amendment rights. Thus, Plaintiff

does not present a genuine issue of material fact, and it is recommended that Defendants' Motion for Partial Summary Judgment on Plaintiff's Fourth Amendment claims be granted.

      C.      *Plaintiff's Retaliation Claim*

"Prison officials may not retaliate against prisoners for exercising their constitutional rights." *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017). To show a claim for retaliation, the plaintiff must show that (1) he was exercising a constitutional right; (2) the defendant intended to retaliate against the plaintiff for exercising that right; (3) the defendant took a retaliatory adverse act; and (4) causation. To show causation, "the inmate must allege more than his personal belief that he is the victim of retaliation." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). He "must produce direct evidence of motivation, or the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* Finally, "an inmate must allege more than *de minimis* retaliation to proceed with a retaliation claim." *Leggett v. Comer*, 280 Fed.App'x 333, 336 (5th Cir. 2008) (internal quotations omitted).

Plaintiff alleges two bases for his retaliation claim. [docs. #8; 61]. First, in his Amended Complaint, Plaintiff bases his retaliation claim on "defendants [sic] act of improperly placing him in punitive segregation subsequent to requesting a grievance form (A.R.P.)." [doc. #8, p. 8]. Second, in a subsequent deposition, Plaintiff stated that the basis of his retaliation claim is that he "was placed in administrative segregation because of an unlawful search that [he] didn't want to comply with." [doc. #48-10, p. 15].

To the extent that Plaintiff contends he was placed in administrative segregation for opposing an unlawful search, his claim fails because he was not exercising a constitutional right by refusing to consent. Even if the search had occurred, it would not have been a violation of

11

Plaintiff's Fourth Amendment rights. Like the cell 53 search, the sally port search would survive constitutional review. The scope of the search was limited to a visual body cavity search. [doc. #48]. Moreover, the search was not random or arbitrary, but would have performed solely because Plaintiff had just returned from outside the prison (just as the others who **were** searched). *Id.* The justification for the search was reasonable because it was performed in order to prevent contraband from entering the prison.

Also, like the cell 53 search, the manner and location were both reasonable. The attempted sally port search would have been performed by two officers and in the presence of three inmates, a reasonable number of people given the high number of inmates who needed to be searched after returning to the prison. *See Ponce*, 2015 WL 5971074, at *1, 4 (finding constitutional a prison's practice of searching inmates in groups of approximately ten after the inmates had returned from off-campus work sites). Although the sally port had windows and their transparency is disputed, even completely transparent windows would not render this an unreasonable search location. The Fourth Amendment does not require that searches be conducted using the "least restrictive means." *Milligan v. City of Slidell*, 226 F.3d 652, 655 (5th Cir. 2000). Accordingly, visual body cavity searches will not be deemed unreasonable merely because they could have been conducted in a more private location. *See Elliott*, 38 F.3d at 190 (affirming the district court's ruling that the search at issue was constitutional, a decision which partially rested on the Court's determination that "although the search could have been conducted with more privacy, the correctional officers were not required to use the least restrictive means in performing the search"). As the sally port search would not have violated Plaintiff's Fourth Amendment rights, Plaintiff's refusal to comply with this attempted search cannot form the basis for a retaliation claim.

To the extent that Plaintiff contends that he was retaliated against because he requested a form, his claim also fails to raise a genuine issue of material fact for trial. Defendants concede, and the undersigned agrees, that the filing of grievances and complaining of the conduct of correctional officers through proper channels are constitutionally protected activities. *See Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009) ("Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities."). However, Defendants argue that Plaintiff's retaliation claims fails because he cannot establish the second (intent) or fourth elements (causation) of a retaliation claim when he was placed in segregation because he refused a direct order from UPDC personnel. [doc. #48].

Although Plaintiff has asserted that he requested a grievance form, he toggles between claiming that he was retaliated against because he refused to comply with the sally port search and because he requested a grievance form. [docs. #1; 8; 61]. Plaintiff's "changing tale is conclusional at best." *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019), *cert. denied,* 140 S.C. 250 (2019). Therefore, Plaintiff has failed to raise a genuine issue of material fact for trial as to Defendants' retaliatory intent.

Likewise, Plaintiff has failed to raise a genuine issue of material fact for trial on causation. He has failed to adduce any evidence that, but-for his request for a grievance form, he would not have been put in administrative segregation. Defendants assert that he was placed in administrative segregation for refusing to comply with the sally port search. Plaintiff has offered nothing but speculation to support his claim otherwise. In fact, as noted, he has himself alternated between theories as to why he was placed in administrative segregation.

Finally, as to the third element, placement in administrative segregation does not constitute a more-than-de-minimis retaliatory act. Although ten days in administrative segregation is admittedly unpleasant, one court in this district found previously that relatively short stays in administrative segregation are de minimis adverse acts and thus, are insufficient to give rise to a retaliation claim. *See Berry v. Windham*, No. 07-1860, 2008 WL 2455614, at *8 (W.D. La. May 29, 2008) (finding that being put in administrative segregation for a maximum of sixteen days was a de minimis adverse act). Therefore, because Plaintiff has not shown more than a de minimis adverse act, his retaliation claim cannot succeed.

In conclusion, although Plaintiff's request for a grievance form is a protected constitutional activity, he has failed to raise a genuine issue of material fact on the remaining three elements, and it is recommended that Defendants' Motion for Partial Summary Judgment on Plaintiff's retaliation claim be granted.

## IV. RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that Defendants' motion for partial summary judgment, [doc. # 48], be **GRANTED**, and Plaintiff's Fourth Amendment, Eighth Amendment, and retaliation claims[1] be **DISMISSED WITH PREJUDICE**.[2]

---

[1] In their motion for summary judgment, Defendants argue that, even if Plaintiff has raised a genuine issue of material fact on his constitutional claims, they are entitled to qualified immunity in their individual capacities. [doc. #48, p. 16]. In their Reply memorandum, they also argue, for the first time, that Plaintiff has failed to establish municipal liability. [doc. #62, p. 6]. Given the undersigned's recommendations, it is not necessary to reach these arguments. In any event, regarding Defendants' municipal liability argument, Plaintiff had no notice or opportunity to respond to this argument prior to filing his opposition, and, thus, it should not be considered without giving him an opportunity to respond.

[2] If the Report and Recommendation is adopted, this will result in the dismissal of all Plaintiff's remaining claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 18th day of November, 2021.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE